**In re Jimmy Delwyn CLEMENTS and Nell Brock Clements, Debtors.**

**Bankruptcy No. 94–3779–BKC–3F3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Aug. 22, 1995.

Earl M. Barker, Jr., Jacksonville, FL, for debtors.

David B. Ferebee, Jacksonville, FL, Evans Crowe, Mobile, AL, for Locomotion Prop. Ltd.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case is before the Court upon a Confirmation hearing held June 29, 1995. The Debtors seek Court approval of their Chapter 13 Plan of Reorganization. An Objection to the Debtors' Chapter 13 Plan has been filed by a creditor, Locomotion Properties, Ltd. The Objection was heard at the Confirmation hearing. Based upon the evidence presented at the hearing, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtors filed their petition in bankruptcy under Chapter 13 on September 2, 1994. The history of this case has basically been one long contentious dispute with the Debtors' primary creditor, Locomotion Properties, Ltd. (hereinafter "Locomotion"). Locomotion filed a Motion for Relief from Stay, which this Court subsequently denied on February 7, 1995 after issuing Findings of Fact and Conclusions of Law (Doc. Nos. 30 and 31). On January 3, 1995, Locomotion filed a claim in the amount of $250,138.98, which Debtors objected to on January 17, 1995. The Court has determined Locomotion's claim is valid in the amount of $239,-596.48 in Findings of Fact and Conclusions of Law entered concurrently with this opinion. Locomotion has also objected to confirmation of the Debtors' Plan.

The genesis of the problems between these two parties concerns a lease of real property in Alabama. On November 2, 1979, Locomotion executed a lease of property with a building located in Mobile, Alabama to Twickenham Station, Inc., (hereinafter "TSI") who was to use the property to operate a restaurant. Debtors are guarantors of the lease, which the Court found to be valid. Now that TSI has defaulted under the terms of the lease, Debtors are liable for a claim of $239,596.48 for rent and expenses, calculated pursuant to 11 U.S.C. § 506. This claim makes Locomotion by far the largest creditor, secured or unsecured, of the Debtors.

In fact, without the claim of Locomotion, Debtors only owe $4,558.91 in other claims, mainly in small credit card debt.

The Debtors propose to pay $600 per month for a period of 36 months to pay their claims. The one secured claim the Debtors scheduled is being satisfied by surrendering the collateral, leaving only the unsecured claims of Locomotion and the $4,558.91 in credit card debt. The plan payments will total $21,600 over the life of the plan, meaning Debtors will only be paying 8.8% of their claims through the Chapter 13 plan. Additionally, Debtors' attorney filed a Motion for Allowance of Attorneys' Fees and Expenses, asking the Court to approve disbursement of attorney's fees for Debtors' counsel, out of the Plan payments. That, in and of itself, is not unusual. However, Debtors' counsel is asking the Court to approve attorney's fees and expenses in the amount of $14,512.45 which had been spent, but not reimbursed, as of May 30, 1995. In addition, the motion specifically reserved the right to add to that total for fees incurred after that date. Since the Confirmation Hearing was held after that date, as well as various documentary submissions by Debtors' attorney to the Court, the Court presumes that that figure will be added to, probably quite significantly. After the $14,512.45 in attorney's fees is deducted from the $21,600 in total Plan payments, the percentage of creditor claims paid drops to 2.9%. With the addition of more attorney's fees incurred after May 30, 1995, the amount available to pay creditors will certainly drop even more. The Court suspects it will drop to almost, if not, zero.

The issue, then, before the Court is whether a Plan which proposes to pay first only 8.8% of total claims, and if the Motion for Allowance of Attorney's Fees is granted, only 2.9% (or less) of total claims, can be confirmed. As part of that, the Court must rule on the Motion for Allowance of Attorney's Fees, determining whether the fees are reasonable.

## CONCLUSIONS OF LAW

11 U.S.C. § 1325 is the governing section for confirmation of Chapter 13 Plans. It provides in pertinent part:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provision of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

\* \* \* \* \* \*

(C) the Debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year-period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor,. . . .

■ Section 1325 gives courts some very specific requirements for confirmation of Chapter 13 Plans. Confirmation of the plan is mandatory if it meets the requirements of § 1325(a). If the trustee, or an unsecured claimant, objects, then the plan must also meet the requirements of § 1325(b). Since Locomotion has objected to confirmation, the Court must consider both sections in this case. The burden of proof in a confirmation proceeding is on the debtor to prove that the requirements of § 1325 have been met. *In re Lindsey*, 122 B.R. 157 (Bankr.M.D.Fla. 1991) (Corcoran, J.); *In re Fricker*, 116 B.R. 431 (Bankr.E.D.Pa.1990).

## Good Faith

■ The first substantive section which should be considered is whether "the plan has been proposed in good faith and not by any means forbidden by law." § 1325(a)(3). As has been discussed numerous times by many different courts, there is no definition of "good faith" in the code. This has led to much discussion among courts as to what constitutes good faith under this section. By and large, most courts have used a "totality of the circumstances" approach, meaning that the bankruptcy court must evaluate each case on a case by case basis, using all relevant factors. *In re Jones*, 119 B.R. 996 (Bankr.N.D.Ind.1990). There is no bright line test for good faith. "The inquiry is, of necessity, fact specific. It 'involves a search into the debtor's conduct and state of mind.' " *Id.* at 1002, *quoting, In re Sutliff*, 79 B.R. 151, 154 (Bankr.N.D.N.Y.1987). "No single consideration, standing by itself, necessarily requires a finding of good or bad faith. Instead, it is the cumulative effect of all relevant factors which leads to such a finding." *Jones, supra* at 1003.

> Confirmation of a Chapter 13 plan requires the exercise of judicial discretion and assessment of evidence by a bankruptcy judge. The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case. Each case

must be judged on its own facts. *Fidelity & Casualty Co. of New York v. Warren (In re Warren)*, 89 B.R. 87 (9th Cir. BAP 1988).

The Eighth Circuit Court of Appeals in the case of *United States v. Estus (In re Estus)*, 695 F.2d 311 (8th Cir.1982) set out a number of factors a court should examine, when using the "totality of the circumstances" approach. These factors have subsequently been used, and modified, by numerous other courts when determining good faith under § 1325. *See, e.g., Warren, supra* at 93; *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123 (6th Cir.1990); *Kitchens v. Georgia R.R. Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983). These factors, as stated by the *Estus* court are:

> (1) the amount of the proposed payments and the amount of the debtor's surplus;
>
> (2) the debtor's employment history, ability to earn and likelihood of future increases in income;
>
> (3) the probable or expected duration of the plan;
>
> (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
>
> (5) the extent of preferential treatment between classes of creditors;
>
> (6) the extent to which secured claims are modified;
>
> (7) the type of debt sought to be discharged and whether any debt is nondischargeable in Chapter 7;
>
> (8) the existence of special circumstances such as inordinate medical expenses;
>
> (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
>
> (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
>
> (11) the burden which the plan's administration would place upon the trustee.

*Estus, supra* at 317.

■ Not all of these factors are relevant in this case, as they would not be in every case. However, there are a few of them that the

Court finds worth examining, the first being the first on the list: the amount of the proposed payments and the amount of the debtor's surplus. The Debtors' Plan proposes to pay $600 per month over a period of 36 months to satisfy the claims of their creditors being paid through the Plan, which total some $244,155.39. The Debtors' schedules and Statement of Financial Affairs lists their total combined monthly income at $4,588.74, which is received from the Debtors' social security payments, and Mr. Clements' work as a "consultant" for Fogcutter, Inc., a restaurant owned by his son.[1] Debtors list total monthly expenses of $3,624, leaving a surplus of $964.74. Since Debtors' plan proposes to only pay $600 per month to their creditors, Debtors are left with an extra $364.74 per month that is not being utilized for living expenses or to pay their creditors. Additionally, Debtors list a payment of $785 per month for "payments for support of additional dependents not living at your home." At the confirmation hearing, Mr. Clements testified this money went to support his 32–year-old daughter, who is a recovering alcoholic, and Mrs. Clements' sister, who suffers from cerebral palsy and lives in a nursing home. In effect, the Debtors are paying more to support relatives they are not legally obligated to support, than they are to their creditors, who they are legally obligated to re-pay.

██ The second *Estus* factor which the Court feels is worthy to examine is "the motivation and sincerity of the debtor in seeking Chapter 13 relief." Mr. Clements plainly stated at the confirmation hearing that the reason he and his wife filed bankruptcy was to deal with state court litigation over the lease guaranty with Locomotion. It has been obvious to this Court throughout this case, that this is basically a two-party dispute between the Debtors and Locomotion over the lease guaranty, which should have been dealt with in the state court action.

When this case was first filed, Locomotion filed a Motion to Lift Stay to allow the state court litigation in Alabama to proceed. In hindsight, the Court now realizes that it should have granted the Motion, and sent this dispute back to state court where it belongs. The Court has not seen any motivation or sincerity on the part of the Debtors to actually fund a Chapter 13 plan designed to re-pay their creditors; in fact, just the opposite. It is obvious that the Debtors filed the Chapter 13 and objected to Locomotion's claim, hoping the Court would find the claim not valid, effectively invalidating a lease guaranty that the Debtors obviously do not wish to honor. In the event the Court found the claim valid, the Debtors propose to pay their creditors (Locomotion being the primary one) only 2.9% of their debt. The Court finds this unconscionable, and an obvious lack of good faith on the part of the Debtors.

The Eleventh Circuit Court of Appeals dealt with a similar issue in *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936 (11th Cir.1986) in which the Debtors owed no debts whatsoever, at the time of filing, except for the obligation on an option contract with Shell Oil Co. Debtors had signed an option contract with Shell Oil to sell them a piece of property for $40,000. The market value of the property was $195,000 at the time Shell decided to exercise its option. Debtors filed a Chapter 13 plan, and sought to reject the option contract. The Court found that the Debtors only motive for filing for bankruptcy protection was to "enhance their financial coffers by manipulating and abusing the bankruptcy process." The Court stated, "Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law. The [Debtors], it seems clear to us, sought to abuse the process through a technicality to

---

1. There was some testimony from Mr. Clements at the hearing that his salary from Fogcutter had decreased somewhat since the petition filing date. However, there was never any testimony or evidence introduced as to how much of a decrease was taken. The same fact was stated in the deposition of the Debtors' son, Gary Clements, introduced into evidence, that his father's salary had decreased in the last six months.

(Depo. of Gary Clements at 120). However, again, there was no testimony or evidence presented as to what the decrease was. Additionally, if there was a decrease in salary, the Debtors' schedules were never amended to reflect that decrease. Therefore, the Court is forced to rely on the figures listed in the Debtors' original schedules.

serve their own malevolent and selfish aims." *Waldron, supra* at 941. The Court also stated that a finding of bad faith need not be based on a finding of actual fraud, requiring malice, scienter, or intent to defraud. The bankruptcy courts should merely preserve the integrity of the bankruptcy process by refusing to condone its abuse. Collier on Bankruptcy states, "... [C]ourts have refused to confirm Chapter 13 plans ... when financially secure debtors attempted to utilize Chapter 13 to avoid their obligations under executory real estate sale or option agreements." 5 Collier on Bankruptcy § 1325.04 (15th ed. 1995).

Numerous courts have held that the mere fact of a small payout Chapter 13 plan does not automatically indicate bad faith. *See, e.g., Caldwell, supra; Deans v. O'Donnell (In re Deans),* 692 F.2d 968 (4th Cir.1982); *In re Myers,* 52 B.R. 248 (Bankr.M.D.Fla.1985) (Paskay, C.J.). However, these same courts have stated that small payout Chapter 13's deserve particular scrutiny. In the case at bar, Debtors are financially secure. They owe very little debt, except for their obligation under the lease guaranty. They own their home outright, an automobile outright, several life insurance policies, and stock in two closed corporations run by their son. It is obvious that they could afford to pay more than 2.9% to their creditors.

### Chapter 7 Liquidation Value

The next step the Court must take is to determine whether Debtors' creditors would be better off if Debtors were in a Chapter 7 liquidation case, rather than this Chapter 13 reorganization.

> The best-interests test under § 1325(a)(4) requires that the property offered the holder of each allowed unsecured claim have a present value, as of the effective date of the plan, not less than the amount that would be paid if the debtors's estate were liquidated under Chapter 7. The language of the statute plainly means that the court is to ascribe a liquidation value to all non-exempt property of the estate....

5 Collier on Bankruptcy § 1325.05(d) (15th ed.1995).

When finding that there was no minimum percentage repayment requirement in § 1325, the court in *Deans* stated that the only minimum repayment spelled out by Congress in the statute was the Chapter 7 liquidation test, meaning that unsecured creditors must receive more in a Chapter 13 than they would in a Chapter 7. That is the minimum repayment requirement in Chapter 13.

The only non-exempt assets Debtors listed on their schedules is 500 shares of stock in Fogcutter, Inc., the restaurant owned by the Debtors' son, and two shares of stock in University Properties, Inc., which Mr. Clements testified is a real estate holding company, also controlled by his son. The Debtors listed a value of $125,000 for the stock in Fogcutter and $1000 for the stock in University Properties. Both of these corporations are closely held, with all of the stock owned by Mr. Clements and his son Gary. There was some controversy at the hearing as to the value of the stock on the open market, with the Debtor arguing that the stock had little, if any, value on the open market, since the corporations are closely held. In his deposition, Gary Clements testified that if a Chapter 7 trustee were to sell the 500 shares of stock in Fogcutter, he would not receive more than $50,000; and further the Chapter 7 trustee would not receive more than $1000 for the two shares of stock in University Properties. (Depo. of Gary Clements at 143–145).

No independent testimony or evidence was presented as to the value of the stock, so the Court has no means of ascribing an independent value to it. The Debtors valued the stock themselves in their schedules at a total of $126,000. Gary Clements valued the stock much lower, but still stated a value of $51,000. Both of these figures are far higher than the Debtors' proposed payments in this Chapter 13 plan. Debtors propose to pay their creditors $21,600 over three years. If the Court were to grant the Application for Attorney's Fees, the creditors would only receive $7,087.55, if that, depending on how high the attorney's fees were to go. Simple math shows that the creditors would be better off if the Debtors were in a Chapter 7 liquidation case, rather than this proposed Chapter 13 plan. Even though the Debtors

claim to own few non-exempt assets, and using the most conservative figure to value the stock, it is clear that Debtors flunk part two of the test for confirmation under § 1325.

### Disposable Income Test

■ Since there is an objecting unsecured creditor in this case, the Court must move on in its analysis to § 1325(b)(1)(B): the disposable income test. The Debtors must be using all of their disposable income to fund the plan in order for the Court to confirm the plan. Disposable income is defined in the code as income "which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." The Court has already found that using the stated monthly income and expense figures listed by the Debtors in their schedules, the Debtors have a $364.74 surplus, which is not being used for expenses or to fund the plan. Additionally, the Debtors are spending $785 per month to support an adult daughter and Mrs. Clements' adult sister. Although the Court is not unsympathetic to the problems of the Debtors' relatives, there must come a time when the Debtors realize that legal obligations take precedence over moral obligations. Though the Debtors may feel a moral obligation to support their adult daughter and Mrs. Clements' sister, they have no legal obligation to support them. Neither of these women are legal dependents of the Debtors. The Debtors' daughter is 32 years old; notwithstanding the fact that Mr. Clements testified that she is a recovering alcoholic, the Court feels there is no legal obligation for the Debtors to support her. The same goes for Mrs. Clements' sister who resides in a nursing home with cerebral palsy. Mr. Clements testified that Medicare covers the cost of the nursing home, but that they pay for private nurses for her, and for other amenities not covered by Medicare. Once again there must be a distinction drawn between one's moral and legal obligations. The simple fact is that Debtors are not under any legal obligation to pay $785 per month to support these two women. The Debtors are legally obligated to pay their creditors. That obligation must come first.

The Court finds that Debtors are not placing all of their disposable income into the plan payments. "... [T]he purpose of chapter 13 is to provide the maximum recovery to creditors while at the same time leaving the debtor sufficient money to pay for his or her basic living expenses." *In re Jones,* 55 B.R. 462 (Bankr.D.Minn.1985). The legislative history of chapter 13 states that chapter 13 "contemplates a substantial effort by the debtor to pay his debts", and furthermore, "[s]uch an effort may require some sacrifices by the debtor." S.Rep. No. 65, 98th Cong. 1st Sess. 22 (1983), *cited in, Jones, supra* at 465. The Court in the case at bar does not see either a substantial effort, or a sacrifice being made by the Debtors.

The Court is going to deny confirmation of this Chapter 13 plan. The Court finds that the case does not meet the requirements of § 1325. The plan was not filed in good faith, the creditors would not receive more under this plan than they would in a Chapter 7, and further the Debtors are not putting all of their disposable income into the plan. The Court does not feel it is necessary to rule on the Application for Attorney's Fees. The Court has already discussed how much of the plan payments would be eaten up if the Court were to grant the application. However, even without the attorney's fees, this plan still does not meet the requirements of § 1325.

A separate final order will be entered in accordance with the foregoing.

### ORDER DENYING CONFIRMATION AND DISMISSING CASE

This case is before the Court upon a Confirmation hearing held June 29, 1995. In accordance with Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

1. Confirmation of this case is denied for failure to meet the requirements of 11 U.S.C. § 1325.

2. The case is dismissed.

3. The automatic stay imposed by 11 U.S.C. § 362 and the stay of action against

910

codebtor imposed by 11 U.S.C. § 1301 are lifted.

4. The Chapter 13 Standing Trustee reports that she has $6,600.00 on hand from funds deposited by the Debtors. The Trustee shall retain $115.50 pursuant to 11 U.S.C. § 503(b) as expenses and refund to the Debtors the balance of $6,484.50, as required by 11 U.S.C. § 1326.