**In re Gregory L. PETERSEN, Debtor.**

**Bankruptcy No. 97–08873–BKC–3F3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Dec. 8, 1998.

David E. Otero, Jacksonville, FL, Peter L. Steinman, Los Angeles, CA, for Movant.

Robert L. Altman, Palatka, FL, for debtor.

Chris Harris, Jacksonville, FL, for Mamie L. Davis, trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on Richard A. Wall's Objection To Confirmation filed on August 14, 1998 based upon the Debtor's alleged lack of good faith and ineligibility to file for Chapter 13 bankruptcy relief. (Doc. 47.) On September 18, 1998, a hearing was held on this Objection. Based upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The facts underlying this case exemplify the society presented by the modern day talk show. But while this opinion need not delve into the interpersonal relationship of the parties involved in this case, the Court does note its optimism as we turn toward bankruptcy reform and the turn of the century.

### A. Debtor's Personal and Financial Situation

Gregory L. Petersen ("Debtor") filed a petition for Chapter 13 bankruptcy relief in the Middle District of Florida, Jacksonville Division on November 20, 1997. (Doc. 1.) On December 20, 1997, Debtor filed schedules listing total assets of $206,911.00 and total liabilities of $611,238.00. Additionally, Debtor listed $97,360.00 in attorney's fees and costs for payments related to debt counseling or bankruptcy within one year immediately preceding this Chapter 13 case.

Debtor's Schedule F—Creditors Holding Unsecured Nonpriority Claims lists the following claims:

| | | | |
|---|---|---|---|
| 1. | Dr. Bernard Billik | $ 5,000.00 | (fixed and liquidated) |
| 2. | Ray Bowen | $ 8,000.00 | (fixed and liquidated) |
| 3. | Elizabeth Petersen | $ 15,238.00 | (fixed and liquidated) |
| 4. | Trope & Trope, P.C. | $ 33,000.00 | (disputed, contingent, and unliquidated) |
| 5. | Richard A. Wall | $550,000.00 | (disputed and unliquidated) |
| | **TOTAL** | **$611,238.00** | |

On March 3, 1998 Richard A. Wall ("Wall") filed the only proof of claim in this case for $551,796.51.

Debtor currently lives with his wife and son. Debtor's wife recently gave birth to twins, but only one survived. The surviving child has severe medical problems. Debtor testified that he blames himself for the death of one twin and the medical problems of the other, claiming it as punishment for his wrongs. Debtor also used funds he received from his wife to pay penance (called an indulgence) of $500.00 per week in 1997 to a church in Jacksonville, Florida. Debtor also testified that whenever money came into his hands he used it to hire bodyguards out of fear of retribution from Wall.

Debtor's current income is from government-assisted disability and unemployment payments. Debtor's Schedule J—Current Expenditures of Individual Debtors lists monthly income of $1,456.00 and total monthly expenses of $1,132.00. Debtor lists monthly expenses of $200.00 for rent, $62.00 for utilities including cable television, $300.00 for food, $50.00 for laundry and dry cleaning, $50.00 for transportation, $50.00 for recreation, $20.00 for charitable contributions, and $400.00 for health insurance. Debtor testified that he accounted for his wife's contributions to the family's upkeep and that his wife receives money from an inheritance that is used to support their family.

Debtor's Chapter 13 plan proposes to pay $324.00 per month for a period not to exceed thirty-six (36) months, potentially totaling $11,664.00. This amount represents 1.91 percent (%) of Debtor's listed unsecured claims and approximately twelve percent (12%) of the amount Debtor paid for debt

counseling within the year immediately preceding this case.[1]

Debtor's Schedule C—Property Claimed As Exempt lists a 401K plan worth $196,000.00, certificates of deposit worth $7,536.00, a pension plan from Disney with an unavailable value, and tangible assets with little value. Debtor also lists potential claims against Wall for malicious prosecution and against the California law firm of Trope & Trope, P.C. for professional malpractice, but does not have the funds available to proceed with legal action. Debtor insists that the Chapter 13 trustee can pursue these claims and apply damages received to Debtor's plan.

Prior to filing his petition, Debtor lived a luxurious life in California. In 1995, Debtor earned $541,747.00 in salary, bonuses and stock options as an executive with the Disney Corporation. At some point in 1996, Debtor left his position with Disney and began drawing unemployment and disability income. Debtor claimed he had a mental breakdown, which lead to his leaving his position with Disney, nevertheless, Debtor earned $267,514.00 in 1996. For 1997, Debtor listed income of $15,792.00, derived solely from unemployment and disability.

Debtor listed the loss of his Lamborghini, which was supposedly firebombed in November 1996. The insurance funds received for this loss were purportedly used for attorney's fees. Debtor also previously owned Rolls Royces, one of which he claims to have given a workman in exchange for some repairs done on his California home which he claims was extensively damaged due to mudslides. No proof other than Debtor's questionable testimony was offered to support these contentions.

In October 1996, Debtor and his wife purchased a $67,000.00 lot in Duval County, Florida with joint funds. This property was held by the entireties until April 1997, when Debtor claims to have sold his half interest in this property to his wife for $35,000.00. Debtor claims to have used this money for living expenses, medical debt, credit card debt, and funeral expenses.

The facts surrounding Debtor's breakdown are unclear. Debtor claims Wall harassed him, threatened his life, and destroyed his property. Debtor testified that he paid vast amounts of attorney's fees in litigation between he, Wall, and Leslie Barkley. Debtor also claims to have paid large sums of money for psychological care and for protection through hiring bodyguards. Again, no evidence except for Debtor's testimony was offered to support these contentions. In addition, Debtor is a licensed attorney in Maryland, but has not paid bar dues due to his financial problems and therefore, is not currently able to practice.

## B. The California Litigation

On July 10, 1995, Wall filed a lawsuit against Debtor and Leslie F. Barkley ("Barkley") in the Superior Court of the State of California for the County of Los Angeles. On July 16, 1996, Wall filed a Second Amended Complaint ("Complaint") with the California state court containing causes of action for possession of gifts made in contemplation of marriage, promissory fraud, conversion, money had and received, constructive trust, extortion, false imprisonment, malicious prosecution, intentional infliction of emotional distress and conspiracy. The Complaint alleged that Barkley, with the aid and assistance of Debtor, fraudulently obtained and converted over $550,000.00 of Wall's money and property. Additionally, Wall alleged that when Wall demanded return of his money and property, Barkley and Debtor attempted to extort money and blackmail him.

Barkley, Debtor's mistress and co-defendant in the California litigation, filed a chapter 13 petition on January 17, 1997 in the Central District of California. On March 25, 1997, the Chief Bankruptcy Judge for the Central District of California dismissed Barkley's bankruptcy case due to Barkley's ineligibility under 11 U.S.C. § 1325. Chief

---

1. Debtor claims an offset to the default judgment from the California court due to the sale of property in Mississippi. However, Debtor admits payment to unsecured creditors, with or without the claimed offset, will not exceed four percent (4%) under his proposed Chapter 13 plan.

Judge Mund found that the bankruptcy filing lacked good faith due to its use as a litigation tactic and imposed sanctions against Barkley's counsel. On June 16, 1997, Barkley filed a chapter 7 bankruptcy in Mississippi, while still listing a California address.

On July 11, 1997, the California state court entered defaults against both Barkley and Debtor for violations of that court's orders compelling them to appear, testify and produce documents at their depositions, and for making it impossible to proceed with court-ordered mandatory settlement conference. On November 12, 1997, upon these defaults and the requirements of California law, Wall filed documentation to prove damages against Debtor, showing such damages to be at least $610,404.88. These damages consisted of money and property Debtor and Barkley wrongfully obtained. However, Wall only sought a judgment against Debtor for $550,-000, the amount of damages pled in the Complaint, plus $1,796.51 in recoverable costs, for a total of $551,796.51.

On November 20, 1997, Debtor filed this bankruptcy case, thus staying the California court's determination of the amount and entry of the final judgment against Debtor. On May 4, 1998, this Court granted Wall's Motion to Modify Stay, allowing the California State court to proceed with judgment. On July 8, 1998, Judge Mary Ann Murphy of the Los Angeles County Superior Court entered a Judgment By Court After Default Against Defendant Gregory L. Petersen. Judge Murphy stated that:

> ... plaintiff Richard A. Wall shall recover from defendant Gregory L. Petersen the sum of $555,000 representing damages suffered by Mr. Wall from defendant Petersen's fraud, conversion, extortion, intentional infliction of emotional distress, false imprisonment, malicious prosecution, and conspiracy, plus allowable costs and disbursements in the amount of $1,796.51, for a total judgment of $551,796.51, together with interest on said judgment as provided by law.

Wall seeks dismissal of this case and objects to the confirmation of the Debtor's proposed Chapter 13 plan because it was not proposed in good faith as required by 11 U.S.C. §§ 1307(c) and 1325(a)(3).[2] Debtor seeks confirmation of his Chapter 13 plan.

### CONCLUSIONS OF LAW

 The confirmation of a Chapter 13 plan relies upon the plan meeting the requirements of 11 U.S.C. § 1325.[3] Specifical-

2. Wall also sought dismissal and objected to confirmation claiming Debtor exceeded the limitations of 11 U.S.C. § 109(e). The Court ruled against Wall on that issue.

3. *Confirmation of plan*

(a) Except as provided in subsection (b), the court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder; and
(6) the debtor will be able to make all payments under the plan and to comply with the plan.
(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
(2) For purposes of this subsection, "disposable income" means income which is received

ly, in this Case, the Court focuses upon 11 U.S.C. § 1325(a)(3) requiring that the plan be proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1325(a)(3) (1998). The central inquiry for the Court is the Debtor's alleged lack of good faith, and the Court does not focus on any allegations of the Debtor's bad faith as bad faith is not mentioned in § 1325. The burden of proof to establish that a plan is proposed in good faith is on the debtor. *In re Norman*, 162 B.R. 581, 583 (Bankr.M.D.Fla. 1993). A debtor's burden further increases if a Chapter 13 "superdischarge" is sought. *In re Elisade*, 172 B.R. 996, 1000 (Bankr. M.D.Fla.1994); *In re Wall*, 52 B.R. 613, 616 (Bankr.M.D.Fla.1985).

■■■ In addressing whether a debtor has proposed a plan in good faith, this Court applies a totality of the circumstances test. The Eleventh Circuit in *Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983), delineated eleven factors that courts should consider in determining a debtor's good faith under 11 U.S.C. § 1325, including

(1) the amount of the debtor's income from all sources;

(2) the living expenses of the debtor and his dependents;

(3) the amount of attorney's fees;

(4) the probable or expected duration of the debtor's Chapter 13 plan;

(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

(8) special circumstances such as inordinate medical expense;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

(10) the circumstances under which the debtor has contracted his debts and his

demonstrated bona fides, or lack of same, in dealings with his creditors;

(11) the burden which the plan's administration would place on the trustee.

*Id.* at 888–89. As with any totality of the circumstances test, no one factor will dispose of the issues of this Case. Rather, the Court must consider all of the circumstances surrounding the Debtor's pre-petition activity and the filing of the Case.

■■■ "Congress enacted chapter 13 to provide[ ] a highly desirable method for dealing with the financial difficulties of individuals. It creates an equitable and feasible way for the honest and conscientious debtor to pay off his debts rather than having them discharged in bankruptcy." *Jim Walter Homes, Inc., v. Saylors (In re Saylors)*, 869 F.2d 1434, 1436 (11th Cir.1989) (quoting H.R.Rep. No. 193, 86th Cong., 1st Sess. 2 (1959)). The Eleventh Circuit further stated that "[t]he good faith requirement of 11 U.S.C. § 1325(a)(3) is sufficient to prevent undeserving debtors from using this procedure, yet does not prevent deserving debtors from using the procedure." *Id.* For the reasons provided below, the Court finds Debtor undeserving of the chapter 13 procedure.

### A. Debtor's motivations and sincerity in seeking Chapter 13 relief.

In determining whether a bankruptcy petition is filed in bad faith, the Eleventh Circuit has stated that the bankruptcy court should consider "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13". 702 F.2d at 889. When reviewing this factor, courts have considered evidence that the debtor is attempting to abuse the judicial process and circumvent the purposes of the reorganization provisions. Evidence that the petition was filed to delay or frustrate the legitimate efforts of creditors to enforce their rights is an important factor in the analysis. Addi-

---

by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(c) After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.

11 U.S.C. § 1325 (1998).

tionally, petitions are routinely dismissed for lack of good faith where the case was filed as a litigation tactic.[4]

Viewing the evidence presented, the Court finds that the Debtor's primary purpose in filing was to impede the California Lawsuit, where judgment against Debtor was near a final determination. Wall filed sufficient evidence to support the entry of a final default judgment in the amount of $550,000, plus costs, against Debtor on November 12, 1997. Eight days later Debtor filed his Chapter 13 petition, thus staying further action by the California state court.

The timing of filing is a relevant factor in analyzing good faith, but not as telling as Wall would like it to be. The Court would have to draw a line before which any filing by Debtor would be considered as a lack of good faith and after which any filing by Debtor would be considered in good faith. The Court finds that any line drawn would necessarily be arbitrary and therefore, refuses to draw such a line. Further, the Court notes that generally debtors do not seek bankruptcy protection at a time when they feel their financial affairs are manageable. Rather, the likely scenario is that a debtor files because of foreseeable financial doom. Howev-

er, the Court does view Debtor's bankruptcy as a classic two-party state law dispute. *In re Clements*, 185 B.R. 903, 907 (Bankr. M.D.Fla.1995); *See In re Waldron*, 785 F.2d 936 (11th Cir.1986). In *In re Clements* this Court regretted denying relief from stay which would have allowed a chapter 13 filing based on a two-party dispute to proceed in state Court to adjudication. In this Case, the Court lifted the stay, the California State court adjudicated the matter, and Wall's claim became liquidated in the amount of $550,000, plus costs.

Debtor scheduled no secured claims and no priority claims. Rather, the vast majority of the scheduled debt was unsecured debt related to the litigation with Wall in California. Wall was the only creditor to file a claim against Debtor and the only creditor that would receive payment if this Court confirmed Debtor's plan. Additionally, of the five claims listed, one is for debt owed to Debtor's wife, who did not file a proof of claim.

**B. Debtor's degree of effort, duration of plan, ability to earn, and potential fluctuation of earnings.**

Plan length and the portion of debt to be repaid under a proposed plan are rele-

---

4. *In re Moog*, 159 B.R. 357 (Bankr.S.D.Fla.1993) (Chapter 11 filed by debtor as litigation tactic to circumvent ex-spouse's efforts to enforce divorce decree was dismissed as bad faith filing); *In re Bandini*, 165 B.R. 317 (Bankr.S.D.Fla.1994) (chapter 13 petition dismissed as a bad faith filing where the debtor sought to circumvent the final judgment of the family court through his proposed chapter 13 plan; bankruptcy court in a chapter 13 case is not a substitute for state appeals courts); *In re Schlangen*, 91 B.R. 834 (Bankr.N.D.Ill.1988) (chapter 11 petition dismissed for cause as not having been filed in good faith where purpose of filing was to confer federal jurisdiction); *In re Purpura*, 170 B.R. 202, 207 (Bankr.E.D.N.Y.1994) ("Where ... the filing for relief represented a litigation tactic to stall and impede the enforcement of legal rights against the debtor, dismissal for 'cause', i.e., a bad faith filing, is warranted."); *In re Sherwood Enter., Inc.*, 112 B.R. 165, 171 (Bankr.S.D.Tex.1989) ("use of the bankruptcy process as a litigation tactic is abuse of the reorganization process constituting a lack of good faith in filing which warrants dismissal"); *In re Chinichian*, 784 F.2d 1440 (9th Cir.1986) (Chapter 13 plan confirmation order revoked, *sua sponte*, where debtor filed bankruptcy to "defeat the state court litigation"); *In re HBA East, Inc.*, 87 B.R. 248, 260

(Bankr.E.D.N.Y.1988), ("Chapter 11 was never intended to be used as a fist in a two party bout. The Chapter is entitled reorganization and not litigation."); *In re Crown Fin., Ltd.*, 183 B.R. 719, 723 (Bankr.M.D.N.C.1995), ("The present case involves a classic two-party dispute which is resolvable in state court. The filing was intended, not for the purpose of corporation reorganization, but to delay and frustrate the efforts of the [plaintiffs] to collect on their judgment. Under these and the other circumstances surrounding the filing of this case, the filing must be regarded as one which was not made in good faith"); *In re Creazzo*, 172 B.R. 657, 659 (Bankr. M.D.Fla.1994) ("Factors to consider when making a factual determination of a bad faith case [include] ... abuse of the judicial process to delay creditors or escape the day of reckoning in another court"); *In re Ashton*, 63 B.R. 244 (Bankr.D.N.D.1986) (Chapter 13 petition was not filed in good faith where it was filed immediately prior to a sheriff's sale of foreclosed property and the plan itself appeared to address only the debt to the creditor who had foreclosed); *In re Cregut*, 69 B.R. 21 (Bankr.D.Ariz.1986) (Chapter 13 petition found to have been filed in bad faith where it was filed on the eve of liquidation of a tort claim in state court).

vant to the determination of good faith. *In re Kourtakis*, 75 B.R. 183, 187–188 (Bankr. E.D.Mich.1987); *In re Johnson*, 191 B.R. 179, 182–183 (Bankr.D.Ariz.1995); *In re Caldwell*, 895 F.2d 1123, 1127. Debtor has proposed a three-year plan, the statutory minimum, paying less than 2% of the debt to Wall. While a small pay out alone is not determinative of lack of good faith, it is a factor courts must consider. 185 B.R. at 908. Debtor proposes to pay $324 per month to the trustee over 36 months. After deducting six percent (6%) for the trustee's fee, this payment will lead to a total of $10,964.16 to Wall, representing less than two percent (2%) of Wall's judgment. Another factor convincing the Court of Debtor's lack of good faith is the fact that Debtor's attorney's fees far exceed the pay out to creditors under Debtor's plan.

In addition to extremely low pay out over the minimum statutory period for a Chapter 13 plan, the Court finds Debtor to have the potential to substantially increase his earnings over the life of the plan. Less than three years ago, Debtor's yearly earning nearly exceeded the amount of Wall's claim. Additionally, Debtor, a licensed attorney, could begin to practice law in Maryland or pursue employment in a similar capacity to his former position with Disney. Debtor's lack of effort, ability to earn, and potential fluctuation of earnings support the Court's conclusion that Debtor's plan was not proposed in good faith.

### C. Consideration of Debtor's special circumstances.

The Court understands the loss of Debtor's child. Further, the Court is painfully aware of the psychological effects litigation can cause and how litigation often leads to parties seeking bankruptcy protection. However, in this case, the circumstances surrounding Debtor's supposed financial collapse leading to bankruptcy are questionable. The Court finds Debtor to have little integrity and even less sincerity in seeking bankruptcy protection for the purposes it is meant for.

Additionally, the Court deeply questions the credibility of Debtor's testimony. Debtor testified to the disposition of many luxuries prior to his filing. He testified to his mudslide-damaged home, firebombed Lamborghini, traded Rolls Royce, payment of attorney's fees, gifts to the church and on and on. However, no proof supporting Debtor's testimony was presented to the Court.

### D. Circumstances of Debtor's debts and dealings with creditors.

An additional factor courts examine to determine whether a plan was proposed in good faith is whether dischargeable Chapter 13 debt would be nondischargeable under another chapter.

> The burden of proof to establish that a Plan is proposed in good faith is squarely on the Debtor. This burden is especially heavy if a debtor seeks to obtain the benefits of a "superdischarge" available in Chapter 13 and some or most of the debts sought to be discharged are creations of fraud or otherwise wrongful conduct.

*In re Wall*, 52 B.R. at 616. *See In re Estus*, 695 F.2d at 317; *In re Elisade*, 172 B.R. at 1000.

The type of debt sought to be discharged and whether the debt is nondischargeable in Chapter 7 is relevant to the consideration of whether a debtor has proposed a Chapter 13 plan in good faith. *In re LeMaire*, 898 F.2d 1346, 1349 (8th Cir.1990). A Chapter 13 Plan serving no purpose other than the discharge of an otherwise nondischargeable debt by a debtor not in need of Chapter 13 relief should be denied for lack of good faith. *Ohio Student Loan Comm'n v. Willis*, 24 B.R. 293, 294 (Bankr.S.D.Ohio 1982). *See In re Bloom*, 3 B.R. 467, 472 (Bankr.C.D.Cal.1980).

The judgment against the Debtor is for fraud, conversion, extortion, false imprisonment, malicious prosecution, intentional infliction of emotional distress and conspiracy in California. This Court did not have reason or opportunity to determine the dischargeability of this judgment nor review issues of collateral estoppel during the course of this case. While this factor would add support to the Court's position that the plan was not proposed in good faith, the Court

finds support looking to other factors discussed.

**CONCLUSION**

After considering the totality of the circumstances, the Court concludes that Debtor did not propose his plan in good faith as required by 11 U.S.C. § 1325. Debtor has no other real debt than that from the judgment in favor of Wall. The Court finds that Debtor's testimony is not credible. Additionally the Court finds that Debtor has the ability to do more and is looking to bankruptcy relief for a windfall from the problems he created for himself.