In re Rhoda A. NOTTINGHAM, Debtor.

Bankruptcy No. 98–02013–3F3.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Dec. 14, 1998.

David E. Otero, Jacksonville, Florida, for debtor.

Cynthia A. Jackson, Jacksonville, Florida, for Surety.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court for a confirmation hearing on Rhoda A. Notting-

ham's Second Amended Chapter 13 Plan ("Plan"). A hearing was held on December 1, 1998. Surety Bank, N.A. ("Surety") filed an objection to confirmation and contested confirmation of the Plan at the hearing. (Doc. 70.) The Chapter 13 Trustee recommends confirmation. Based upon the evidence and argument presented at the hearing, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On December 1, 1997, Surety filed a petition in Texas state court naming Rhoda A. Nottingham ("Debtor"), Beverly Insurance Group, and Beverly Insurance Group, d/b/a First Coast Insurance Service ("Defendants") as defendants. (Debtor's Ex. 4.) On January 5, 1998, Defendants responded by filing a Special Appearance to Plaintiff's Original Petition and Memorandum of Law contesting personal jurisdiction over Defendants (Debtor's Ex. 1.) Debtor filed a petition for chapter 13 relief on March 16, 1998, staying action against Debtor. The Texas state court never heard the Special Appearance. (Debtor's Ex. 3.)

On May 5, 1998, Surety filed a Motion to Dismiss or Convert Case to Chapter 7. (Doc No. 11.) On July 1, 1998, the Court held an evidentiary hearing on Surety's motion. (Debtor's Ex. 4.) On August 24, 1998, this Court entered an Order Denying Motion to Dismiss or Convert Case to Chapter 7 and Findings of Fact and Conclusions of Law.[1]

Debtor's Plan was served and noticed pursuant to F.R.B.P.2002. (Doc. 4.) The Plan requires that Debtor make sixty (60) payments of $670.67 per month beginning April 16, 1998. (Debtor's Ex. 2.) All payments were made pursuant to the Plan for the eight months since the bankruptcy filing date. A total of $40,240.40 will be paid under Debtor's Plan. Of that amount, $34,932.11 will be paid to the Internal Revenue Service ("IRS")

for an unsecured priority tax claim. The balance will be paid to unsecured creditors in the amount of $2,893.68 and to the Trustee for fees in the amount of $2,414.41. There are no secured claims under the Plan. Currently, the allowed non-priority unsecured claims total $20,753.05.[2] Unsecured non-priority creditors with allowed claims will receive approximately 14% of their claims.

The Claims Register shows $55,685.16 of allowed priority and non-priority unsecured claims. (Debtor's Ex. 5.) Additionally, Surety filed Claim No. 4, an unsecured, non-priority claim for $263,869.93. (Surety's Ex. 2.) Debtor objected to Surety's claim on the basis that Debtor was not a party to any contracts with Surety and did not commit any intentional torts against Surety that would lead to personal liability. (Doc. 16 and 17.)

Debtor testified that her total net monthly take home pay is approximately $1,200.00. Debtor also testified that her husband has been paying additional family expenses since filing and pledges to continue to do so for the duration of her Plan. Accordingly, Debtor's expenses were reduced to $550.00 per month. Thus, Debtor's disposable income is approximately $650.00 per month. The source of future payments under the Plan will be Debtor's income from her current job. Debtor has been employed since finishing her education but her current income is lower than it has been historically.

The treatment that is proposed under Debtor's Plan is better than creditors would receive in a chapter 7 liquidation. The summary and analysis of Plan payments to be made by the Trustee attached to the Plan shows unsecured creditors would not receive any distribution in a chapter 7 liquidation, while under Debtor's Plan, unsecured creditors receive distributions totaling $2,893.54. (Debtor's Ex. 2.)

---

1. The Court incorporates its previously issued Findings of Fact and Conclusions of Law (Doc. 33) and Order Denying Motion to Dismiss or Convert Case to Chapter 7 (Doc. 34).

2. On the agreement of the parties, Debtor's objection to Surety's Claim No. 4 will not be considered by the Court until after there is a final determination of appeal on Surety's Motion to Dismiss. Thus, the Court continued the hearing on Debtor's objection to Surety's claim until further order. Also on the agreement of the parties, for purposes of distributions under the Plan, Surety's claim is valued at zero.

Debtor testified that she filed bankruptcy because Surety had filed the petition against her in Texas, she owed the IRS substantial back taxes, and she had substantial credit card debt. Debtor claimed she had never filed bankruptcy before and that documents filed in this case were truthful and accurate. This testimony was not questioned or contradicted. Additionally, Debtor testified that a sixty-month plan is necessary because thirty-six months of her disposable income would be insufficient to pay the IRS's priority claim.

## CONCLUSIONS OF LAW

Surety's objection raised four arguments against confirmation of Debtor's Plan. Surety claims that Debtor does not meet 11 U.S.C. § 109 eligibility requirements, that Debtor has not proposed her Plan in good faith, that Debtor's Plan is not feasible, and that Surety cannot determine if all of Debtor's disposable income is included in her Plan because Debtor's non-filing husband's income was not listed in Debtor's Schedule I—Current Income of Individual Debtor.

### 1. Debtor is eligible for Chapter 13.

In order for the Court to confirm Debtor's Plan, Debtor must comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1325(a)(1). Surety objects to confirmation based on its argument that the Debtor is ineligible for chapter 13 relief. 11 U.S.C. § 109(e). Previously, in its August 24, 1998 Order Denying Motion to Dismiss or Convert Case to Chapter 7 and Findings of Fact and Conclusions of Law, this Court held that Debtor's noncontingent, liquidated unsecured debts on the filing date did not exceed the debt limitations set forth in 11 U.S.C. § 109(e). The Court incorporates that order and Findings of Fact and Conclusions of Law issued in overruling Surety's objection based on the Debtor's eligibility for chapter 13 relief.

### 2. Debtor proposed her Plan in good faith.

In order to confirm the Plan, the Court must find that Debtor's Plan was proposed in good faith. 11 U.S.C. § 1325(a)(3). Surety claims that Debtor lacked good faith when filing this case and proposing the Plan. After the hearing on the Motion to Dismiss, Surety's submissions to the Court seemingly abandoned a lack of good faith argument. (Debtor's Ex. 4.) However, the Court's August 24, 1998 Order dismissed that issue without prejudice to Surety, providing that Surety may raise the issue again at the confirmation hearing. (Debtor's Ex. 4.) Surety argued that Debtor lacked good faith in proposing her Plan. This Court disagrees after looking at the evidence presented and the totality of the circumstances.[3]

This Court addressed the requirement of good faith in *In re Clements*, stating:

[A]s has been discussed numerous times by many different courts, there is no definition of 'good faith' in the code. This has led to much discussion among courts as to what constitutes good faith under this section. By and large, most courts have used a 'totality of circumstances' approach, meaning that the bankruptcy court must evaluate each case on a case by case basis, using all relevant factors. There is no bright line test for good faith.

*In re Clements*, 185 B.R. 903, 906 (Bankr. M.D.Fla.1995). (citation omitted).

Confirmation of a Chapter 13 plan requires the exercise of judicial discretion and assessment of evidence by a bankruptcy judge. The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case. Each case must be judged on its own facts.

*Fidelity & Cas. Co. of New York v. Warren (In re Warren)*, 89 B.R. 87, 90 (9th Cir.BAP 1988). Dismissal or denial of confirmation is appropriate when the Court finds unmistakable manifestations of bad faith. *In re Waldron*, 785 F.2d 936, 941 (11th Cir.1986). This Court, as previously done in *Clements*, looks to the factors a court should examine when using the "totality of circumstances" ap-

---

**3.** This Court recently discussed many issues concerning lack of good faith in its Findings of Fact and Conclusions of Law issued in *In re Petersen*, 228 B.R. 19 (Bankr.M.D.Fla.1998).

proach.[4] One factor favoring the conclusion of good faith is sufficient. *In re Saylors,* 869 F.2d 1434, 1438 (11th Cir.1989). The appropriate weight depends on the credibility of the Debtor. *Id.*

■ The evidence presented does not show that Debtor lacked good faith when filing this case or proposing the Plan. Arguments presented by Surety at the confirmation hearing in support of Surety's lack of good faith argument are that the Plan does not propose substantial payment to the unsecured creditors and that Surety's debt would be non-dischargeable in a chapter 7 case. The Court rejects both of these arguments. First, Debtor's proposed distributions do not show a lack of good faith. Debtor will commit more to her Plan than at the time of filing because of increased disposable income. Debtor claims this is because her husband has agreed to pay all family expenses except those involving her car.

■ The amount paid under the five-year Plan is more than $40,000 and the distribution to unsecured creditors is approximately fourteen percent (14%) if Surety's claim is disallowed. Despite courts, including this one, relying on small payout under a chapter 13 plan as a strong factor indicating lack of good faith, small payout alone will not automatically require a court to make a determination that a debtor did not propose a plan in good faith. *Clements* at 908. Additionally, for reasons that this Court found that Surety's tort claim was not liquidated at the time Debtor filed, the Court has not had opportunity or reason to determine that any debt owed by the Debtor to Surety would be non-

dischargeable in a chapter 7 bankruptcy case.

Reviewing the evidence presented, the Court finds that the totality of the circumstances favor confirmation of Debtor's Plan. Debtor's motivation and sincerity in seeking chapter 13 relief is consistent with the policies of the bankruptcy code in that Debtor has legitimate need to reorganize. In addition to Surety's lawsuit, Debtor was motivated to file by a significant IRS debt and many credit card debts. The duration of Debtor's plan is sixty-months, the statutory maximum, suggesting a good faith effort to commit all disposable income to fund her plan. Debtor has never filed a bankruptcy before. Debtor's past employment history suggests Debtor will be able to continue to earn sufficient income to make payments under the Plan. Should Debtor's income increase creditors may seek an increase in the amount of income contributed to Debtor's Plan. Additionally, documents filed with the Court seem accurate and no unusual burden would be placed upon the Trustee if the Plan is confirmed.

Finally, although not argued by Surety at the hearing, the timing of the Debtor's bankruptcy does not indicate a lack of good faith. It is not unusual for a bankruptcy to be filed shortly after litigation is commenced. For these reasons, the Court finds Debtor's Plan to be proposed in good faith.

### 3. Debtor's Plan is feasible.

■ In order to confirm the Plan, the Court must find that Debtor will be able to make all the payments under the Plan and comply with the Plan. 11 U.S.C. § 1325(a)(6).

---

**4.** Those factors include:
  (1) the amount of the proposed payments and the amount of the debtor's surplus;
  (2) the debtor's employment history, ability to earn and likelihood of future increases in income;
  (3) the probable or expected duration of the plan;
  (4) the accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
  (5) the extent of preferential treatment between classes of creditors;
  (6) the extent to which secured claims are modified;

  (7) the type of debt sought to be discharged and whether any debt is nondischargeable in Chapter 7;
  (8) the existence of special circumstances such as inordinate medical expenses;
  (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
  (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
  (11) the burden which the plan's administration would place upon the trustee.
*Kitchens v. Georgia R.R. Bank & Trust Co. (In re Kitchens),* 702 F.2d 885, 888–889 (11th Cir. 1983).

Surety's objection raised this issue. Surety, however, abandoned this argument at the hearing. Nonetheless, the evidence showed that Debtor's Plan is feasible. Debtor has made the payments required under the Plan to date. Debtor's past employment history suggests continued employment and her current income level is sufficient to make the payments during the Plan.

### 4. Debtor commits all disposable income to the Plan.

If the holder of an allowed unsecured claim objects to confirmation, and if the unsecured creditors are not paid in full under the plan, a debtor must show that she is committing all of her projected disposable income to the plan. 11 U.S.C. § 1325(b)(1). In its objection, Surety raised this issue.[5] Surety, however, does not hold an allowed unsecured claim. Thus, it may not have standing to raise this objection. Further, Surety abandoned this argument at the hearing. Nonetheless, the evidence presented shows that Debtor is committing all of her disposable income to the Plan. Debtor testified that her total net monthly take home pay is approximately $1,200.00. Since the filing date, Debtor's expenses have been reduced to $550.00 per month, thus Debtor's disposable income is approximately $650.00 per month. Because Debtor is making $670.00 payments pursuant to the Plan, she is committing all her disposable income to the Plan. Additionally, a sixty-month plan is appropriate because after applying Debtor's disposable income to the Plan for thirty-six months the IRS's claim would not be paid in full. *See In re Norris,* 165 .B.R. 515 (Bankr. M.D.Fla.1994).

### CONCLUSION

For the reasons discussed, the Court finds that Debtor's Plan meets the requirements of 11 U.S.C. § 1325. Therefore, Surety's objections should be overruled and Debtor's Plan confirmed. The Trustee shall prepare the standard confirmation order in accordance with these Findings of Fact and Conclusions of Law.

---

5. Surety specifically stated in its objection that it could not determine if Debtor was committing all of her disposable income because Debtor's schedules did not reflect her non-filing spouse's income and expenses. Debtor testified at the hearing as to her non-filing spouse's income. After hearing Debtor's testimony, Surety expressly abandoned this position.